# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Case No.: 8:17-CV-01534-RAL-TBM

EDDIE AND AWILDA TORRES, ET AL.,

    Plaintiffs,

 v.

BANK OF AMERICA, N.A.,

    Defendant.

## MOTION AND MEMORANDUM IN SUPPORT BY DEFENDANT BANK OF AMERICA, N.A. TO DISMISS THE COMPLAINT, OR, IN THE ALTERNATIVE, TO SEVER MISJOINED CLAIMS, <u>AND FOR COSTS</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................. 3

    A.  The Home Affordable Modification Program .................................................. 3

    B.  Allegations of the Complaint ......................................................................... 3

    C.  Procedural Posture ......................................................................................... 6

LEGAL STANDARD............................................................................................................ 7

ARGUMENT ....................................................................................................................... 7

I.   Plaintiffs Are Not Properly Joined In A Single Lawsuit. ........................................ 7

II.  Plaintiffs' Claims Are Time-Barred........................................................................ 12

III. Vague Allegations of Dissatisfaction Over Plaintiffs' Failure to Qualify for Loan
     Modifications Do Not State a Claim for Fraud........................................................ 14

    A.  Plaintiffs Fail to Plead that Anyone Misrepresented HAMP Requirements.... 14

    B.  Plaintiffs Fail to Plead They Were Falsely Given Trial Plan Approvals. ......... 17

    C.  Plaintiffs Fail to Plead False Incompleteness Notices. .................................... 19

IV. Plaintiff's FDUTPA Claim Must Be Dismissed Because the Statute Does Not Apply. ........ 21

V.  Even Setting Other Defects Aside, Both Claims Fail as an Impermissible Attempt to
     Enforce HAMP Guidelines. .................................................................................... 22

VI. The Lengthy Shotgun Pleading Is Itself Improper.................................................. 24

VII. Bank of America Is Entitled to Recover its Costs for Plaintiffs' Two Voluntary
      Dismissals of the Same Action. .............................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Related Cases**

*Alonso et al. v. Bank of Am., N.A.,*
No. 8:17-cv-0238-VMC-MAP (M.D. Fla.) ....................................................6, 11, 25

*Paz et al. v. Bank of Am., N.A.,*
No. 8:16-cv-3384-SCB-AEP (M.D. Fla.) ..........................................................6, 25

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.,*
947 F. Supp. 2d 222 (E.D.N.Y. 2013) .....................................................................9

*Anderson v. Deutsche Bank Nat'l Trust Co.,*
2012 WL 3756512 (N.D. Ga. Aug. 6, 2012) .........................................................23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................7

*Azar v. Am. Home Mortg. Servicing, Inc.,*
2010 WL 5648880 (M.D. Fla. July 16, 2010) ......................................................20

*In re Bank of Am. HAMP Contract Litig.,*
2013 WL 4759649 (D. Mass. Sept. 4, 2013) ..................................................3, 7, 8

*Barber v. Am.'s Wholesale Lender,*
289 F.R.D. 364 (M.D. Fl. 2013) .................................................................7, 9, 10, 11

*Beck v. Bank of Am. Home Loans,*
2016 WL 3460382 (M.D. Ga. June 21, 2016) ......................................................23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).........................................................................................7, 15

*Bing Ting Ren v. Wells Fargo Bank, N.A.,*
2013 WL 2468368 (N.D. Cal. June 7, 2013) ........................................................16

*Bohnhoff v. Wells Fargo Bank, N.A.,*
853 F. Supp. 2d 849 (D. Minn. 2012)...................................................................18

*Brown v. Nationscredit Fin. Servs. Corp.,*
32 So. 3d 661 (Fla. 1st DCA 2010) ......................................................................12

42397709;1

*Currie v. Wells Fargo Bank, N.A.*,
   950 F. Supp. 2d 788 (D. Md. 2013) ...................................................................15

*De Leon v. Bank of Am., N.A.*,
   2009 WL 3822392 (M.D. Fla. Nov. 16, 2009) ....................................................21

*Farasat v. Wells Fargo Bank, N.A.*,
   913 F. Supp. 2d 197 (D. Md. 2012) ...................................................................15

*Fevinger v. Bank of Am., N.A.*,
   2014 WL 3866077 (N.D. Cal. Aug. 4, 2014) ......................................................16

*Frantz v. Walled*,
   513 F. App'x 815 (11th Cir. 2013) ......................................................................24

*Garner v. Bank of Am. Corp.*,
   2014 WL 1945142 (D. Nev. May 13, 2014) ..........................................................9

*George v. Wells Fargo Bank, N.A.*,
   2014 WL 61487 (S.D. Fla. Jan. 8, 2014) ............................................................21

*Green v. Citimortgage, Inc.*,
   2013 WL 6712482 (E.D.N.Y. Dec. 18, 2013) ..........................................9, 10, 11

*Groom v. Bank of Am.*,
   2010 WL 627564 (M.D. Fla. Feb. 23, 2010) .......................................................25

*Hartley v. Clark*,
   2010 WL 1187880 (N.D. Fla. Feb. 12, 2010) ................................................7, 8, 9

*Hepp v. Paul Revere Life Ins. Co.*,
   120 F. Supp. 3d 1328 (M.D. Fla. 2015) ................................................................8

*Hofmann v. EMI Resorts, Inc.*,
   2010 WL 9034908 (S.D. Fla. July 21, 2010) ......................................................11

*Jeunesse, LLC v. Lifewave, Inc.*,
   2015 WL 4911349 (M.D. Fla. Aug. 17, 2015) ....................................................13

*Kalie v. Bank of Am. Corp.*,
   297 F.R.D. 552 (S.D.N.Y. 2013) ........................................................................11

*Ligon v. BAC Home Loans Servicing, LP*,
   2012 WL 4382339 (N.D. Ga. Aug. 13, 2012) .....................................................23

*Lyons v. Bank of Am., N.A.*,
   2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) .....................................................15

*Magluta v. Samples*,
    256 F.3d 1282 (11th Cir. 2001) ...........................................................................24

*McClung v. MERS, Inc.*,
    2012 WL 1642209 (N.D. Ala. May 7, 2012) .......................................................17

*McReynolds v. HSBC Bank USA*,
    2012 WL 5868945 (N.D. Cal. Nov. 19, 2012) ....................................................18

*Miccosukee Tribe of Indians of Fla. v. Cypress*,
    814 F.3d 1202 (11th Cir. 2015) ...........................................................7, 15, 16, 20

*Miller v. Chase Home Fin., LLC*,
    677 F.3d 1113 (11th Cir. 2012) ....................................................................22, 23

*Morgan v. PNC Bank, N.A.*,
    2014 WL 1922798 (S.D. Ala. May 14, 2014) ....................................................22

*Nicdao v. Chase Home Fin.*,
    839 F. Supp. 2d 1051 (D. Alaska 2012) .............................................................18

*Null v. GMAC Mortg. Corp.*,
    ECF No. 46 (M.D. Fla. Aug. 20 2004) ...........................................................9, 11

*Osmond v. Litton Loan Serv., LLC*,
    2011 WL 1988403 (D. Utah May 20, 2011) .......................................................18

*Pennington v. HSBC Bank USA, N.A.*,
    493 F. App'x 548 (5th Cir. 2012) ......................................................................17

*Regions Bank v. Legal Outsource PA*,
    2015 U.S. Dist. LEXIS 162248 (M.D. Fla. Dec. 3, 2015).....................................22

*Robinson v. Wells Fargo Bank, N.A.*,
    576 F. App'x 358 (5th Cir. 2014) ......................................................................15

*S&B/Bibb Hines PB 3 J.V. v. Progress Energy Fla., Inc.*,
    2008 WL 2275534 (M.D. Fla. June 2, 2008).......................................................24

*Senter v. JPMorgan Chase Bank, N.A.*,
    810 F. Supp. 2d 1339 (S.D. Fla. 2011) ..............................................................18

*Shibata v. Lim*,
    133 F. Supp. 2d 1311 (M.D. Fla. 2000)..............................................................21

*Smith v. Rainey*,
    747 F. Supp. 2d 1327 (M.D. Fla. 2010)..............................................................24

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
  427 F. App'x 714 (11th Cir. 2011) ...................................................................14, 16, 18, 20

*Suris v. Gilmore Liquidating, Inc.*,
  651 So. 2d 1282 (Fla. 3d DCA 1995) ...................................................................................21

*Temple v. Bank of Am., N.A.*,
  2015 U.S. Dist. LEXIS 1444660 (N.D. Cal. Oct. 23, 2015)....................................................19

*Traynor v. Chase Home Fin., L.L.C.*,
  2013 WL 704932 (N.D. Tex. Feb. 27, 2013) ..........................................................................15

*U.S. Bank, N.A. v. Flores*,
  2014 U.S. Dist. LEXIS 91395 (S.D. Tex. July 1, 2014)..........................................................19

*Westchester Corp. v. Peat, Marwick, Mitchell & Co.*,
  626 F.2d 1212 (5th Cir. 1980) ...............................................................................................13

*Whatley v. Bank of Am., N.A.*,
  2012 WL 5906709 (E.D. Cal. Nov. 26, 2012) .........................................................................15

*White v. Greenpoint Mortg. Funding Inc.*,
  2014 WL 11370418 (S.D. Fla. June 26, 2014),
  *aff'd*, 599 F. App'x 329 (11th Cir. 2015).................................................................................9

*Whitney Info. Network, Inc. v. Gagnon*,
  353 F. Supp. 2d 1208 (M.D. Fla. 2005) ..................................................................................24

**Statutes & Rules**

Fla. Stat. § 95.11 .......................................................................................................................12

Fla. Stat. § 501.201. ...................................................................................................................6

Fla. Stat. § 501.212 ...................................................................................................................21

Fed. R. Civ. P. 8 .......................................................................................................................25

Fed. R. Civ. P. 12 ...............................................................................................................1, 7, 12

Fed. R. Civ. P. 20 ...............................................................................................................1, 7, 10

Fed. R. Civ. P. 21 ....................................................................................................................7, 11

Fed. R. Civ. P. 41 ...............................................................................................................1, 25

42397709;1

Defendant Bank of America, N.A. hereby moves this Court to dismiss Plaintiffs' Complaint under FED. R. CIV. P. 12(b)(6), or, in the alternative, to sever the misjoined claims pursuant to FED. R. CIV. P. 20 and 21, and to award it the costs incurred in Plaintiffs' previously dismissed action pursuant to FED. R. CIV. P. 41(d).

## **INTRODUCTION**

The 109 Plaintiffs here (70 if counting co-borrowers as a single Plaintiff) all defaulted on their mortgage loans and sought help from Bank of America in the form of loan modifications under the federal Home Affordable Modification Program (HAMP). HAMP operated by giving borrowers a trial period to prove they can make sustainable loan payments while the servicer evaluates whether they qualify for permanent relief. Plaintiffs claim that this was an elaborate fraud, the design of which entailed first tricking Plaintiffs into *not* making loan payments, and then tricking them into making loan payments by pretending they were approved for trial modifications. *E.g.*, Compl. ¶¶ 41, 47. For unstated reasons that surely vary from case to case, Plaintiffs failed to qualify for permanent modifications, failed to cure their defaults, and went through foreclosure. Based on this, Plaintiffs accuse Bank of America of common-law fraud and purported violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).

The facts of each Plaintiff's dealings with Bank of America are alleged only in the most general, boilerplate terms—virtually identical from one Plaintiff to the next in an apparent effort to justify joining 109 Plaintiffs in any number of different factual circumstances into one omnibus lawsuit. This is not a permissible joinder under FED. R. CIV. P. 20, and if the Court does not dismiss the suit outright, it should sever it into individual claims. A determination that a particular statement was or was not made to any one borrower (and that it was or was not false as to that borrower) will not decide that question for any other borrower. Plaintiffs concede as much in describing an MDL court's denial of class certification of similar claims (Compl. ¶¶ 36-37),

but it is not any more permissible to lump such disparate claims together by joinder.

In an attempt to make it look as though Plaintiffs' claims share the requisite common questions of law and fact, Plaintiffs allege virtually nothing about the statements made to them on which their fraud claim is ostensibly based and plead each claim in the same generic language. Not only are the key allegations pure boilerplate that falls well short of the Rule 9(b) pleading standard, they fail as a matter of law to allege the elements of the claim—an actual false statement, actual reliance, and consequent injury. Plaintiffs allege no facts capable of justifying the sweeping inference they ask this Court to draw: that their failure to qualify for permanent modifications reflects an elaborate fraud involving trial plans that never really existed, rather than the obvious alternative explanation that Plaintiffs simply failed to qualify. The FDUTPA claim fails for an even more fundamental reason: the statute does not apply to national banks like Bank of America. And *both* claims fail as impermissible back-door attempts to enforce HAMP guidelines, which the Eleventh Circuit has recognized grant borrowers no private right of action.

Despite all this, what is perhaps most striking is what Plaintiffs do *not* allege. Plaintiffs accuse Bank of America of an elaborate fraud, claim that it "deceived" homeowners and government regulators alike, and claim all sorts of unspecified violations of the government's HAMP directives—yet never actually get around to alleging that Plaintiffs themselves ever qualified for loan modifications or were wrongfully denied them. Plaintiffs apparently believe that it is enough to allege that they did not receive modifications and therefore *must* have some kind of claim. But the missing link is an allegation—any allegation at all—that Plaintiffs actually qualified for HAMP and Bank of America incorrectly told them otherwise. This is a fraud case pleaded with all the usual bluster, sound, and fury—but no actual fraud. It should be dismissed.

42397709;1

# BACKGROUND

## A.     The Home Affordable Modification Program

HAMP was a program launched in 2009 by the U.S. Treasury Department as part of an initiative to make mortgage payments more affordable for certain at-risk homeowners through a combination of interest-rate reductions, term extensions, principal forbearance, and other accommodations. *See generally In re Bank of Am. HAMP Contract Litig.*, 2013 WL 4759649, at *1-2 (D. Mass. Sept. 4, 2013). The program operated by having servicers perform "a preliminary evaluation" of the borrower's eligibility, offer the borrower a "Trial Period Plan" "[i]f the preliminary evaluation indicated the borrower was eligible for a HAMP modification," and give the borrower the opportunity to make the modification permanent by making the trial payments, "provid[ing] any required financial documents, and meet[ing] other stated conditions" necessary to qualify. *Id.* at *1. Bank of America has modified over 100,000 loans under HAMP.[1] Over a million more borrowers have received modifications under other programs Bank of America has offered, such as FHA-HAMP for loans insured by the Federal Housing Administration and other counterparts for loans owned by Fannie Mae or Freddie Mac.[2]

## B.     Allegations of the Complaint

Each of the 109 Plaintiffs recites their factual allegations in a virtually identical (and therefore highly general) manner. All, however, complain about their failure to qualify for permanent modifications after going through HAMP trial periods. More specifically:

> ➢ All Plaintiffs allege that they began "experiencing financial hardship" and contacted

---

[1] *See* U.S. Dep't of Treasury, MAKING HOME AFFORDABLE: PROGRAM PERFORMANCE REPORT—THIRD QUARTER 2016, available at *https://www.treasury.gov/initiatives/financial-stability/reports/Documents/3Q16%20MHA%20Report%20Final.pdf*.

[2] Bank of America's modification record is disclosed in its annual 10-K filings, available at *https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000070858&type=10-K.*

Bank of America to "request[] a HAMP modification."[3]

➢ All Plaintiffs allege that they were told that "being past due and in default on their mortgage loan was a perquisite [*sic*] for a HAMP modification"[4]

➢ All Plaintiffs allege defaulting on their loans in an effort to qualify for HAMP.[5]

➢ All Plaintiffs allege subsequently applying for HAMP and sending Bank of America at least some of the required supporting documentation.[6]

➢ All but one of the Plaintiffs complain that they were told their submissions "were incomplete or were not current, forcing [them] to resubmit the information again."[7] One Plaintiff alleges instead that he "sent his HAMP application" in several times. Compl. ¶ 1305.

➢ All Plaintiffs allege they were assigned "new account representative[s]" who "had no information regarding [their] HAMP application[s]."[8]

---

[3] Compl. ¶¶ 40, 57, 76, 95, 114, 133, 152, 171, 190, 208, 226, 244, 262, 280, 298, 316, 334, 352, 370, 388, 406, 425, 444, 463, 482, 501, 520, 539, 558, 577, 595, 614, 633, 652, 671, 690, 709, 728, 747, 766, 785, 804, 823, 842, 861, 880, 899, 918, 937, 956, 975, 994, 1013, 1032, 1051, 1070, 1089, 1108, 1127, 1147, 1167, 1187, 1206, 1225, 1244, 1263, 1282, 1301, 1318, 1337.

[4] *Id*. at ¶¶ 41, 58, 77, 96, 115, 134, 153, 172, 191, 209, 227, 245, 263, 281, 299, 317, 335, 353, 371, 389, 407, 426, 445, 464, 483, 502, 521, 540, 559, 578, 596, 615, 634, 653, 672, 691, 710, 729, 748, 767, 786, 805, 824, 843, 862, 881, 900, 919, 938, 957, 976, 995, 1014, 1033, 1052, 1071, 1090, 1109, 1128, 1148, 1168, 1188, 1207, 1226, 1245, 1264, 1283, 1302, 1319, 1338.

[5] *Id*. at ¶¶ 52, 71, 90, 109, 128, 147, 166, 185, 203, 221, 239, 257, 275, 293, 311, 329, 347, 365, 383, 401, 420, 439, 458, 477, 496, 515, 534, 553, 572, 590, 609, 628, 647, 666, 685, 704, 723, 742, 761, 780, 799, 818, 837, 856, 875, 894, 913, 932, 951, 970, 989, 1008, 1027, 1046, 1065, 1084, 1103, 1122, 1142, 1162, 1182, 1201, 1220, 1239, 1258, 1277, 1296, 1313, 1332, 1351.

[6] *Id*. at ¶¶ 42, 60, 79, 98, 117, 136, 155, 174, 193, 211, 229, 247, 265, 283, 301, 319, 337, 355, 373, 391, 409, 428, 447, 466, 485, 504, 523, 542, 561, 580, 598, 617, 636, 655, 674, 693, 712, 731, 750, 769, 788, 807, 826, 845, 864, 883, 902, 921, 940, 959, 978, 997, 1016, 1035, 1054, 1073, 1092, 1111, 1130, 1150, 1170, 1190, 1209, 1228, 1247, 1266, 1285, 1305, 1321, 1340.

[7] *Id*. at ¶¶ 42, 60, 79, 98, 117, 136, 155, 174, 193, 211, 229, 247, 265, 283, 301, 319, 337, 355, 373, 391, 409, 428, 447, 466, 485, 504, 523, 542, 561, 580, 598, 617, 636, 655, 674, 693, 712, 731, 750, 769, 788, 807, 826, 845, 864, 883, 902, 921, 940, 959, 978, 997, 1016, 1035, 1054, 1073, 1092, 1111, 1130, 1150, 1170, 1190, 1209, 1228, 1247, 1266, 1285, 1321, 1340.

[8] *Id*. at ¶¶ 43, 61, 80, 99, 118, 137, 156, 175, 194, 212, 230, 248, 266, 284, 302, 320, 338, 356,

➤ All Plaintiffs allege being told they were approved for trial plans and to begin making payments, and all allege that "[t]his statement was false" because they "w[ere]n't approved."[9] None of the Plaintiffs articulate any reason for their belief that they weren't really approved.

➤ All Plaintiffs allege that the HAMP trial plans were fraudulent ruses designed to cause them "to send funds so BOA could apply the funds to fraudulent fees." *Id.*

➤ All Plaintiffs identify property "inspection fees" and "late fees" as the purportedly "fraudulent fees," among others they do not specify.[10] Yet Plaintiffs effectively admit that their payments were *not* applied to any such fees, since HAMP rules require servicers to hold trial payments in a custodial account until they can be applied to outstanding loan payments.[11]

➤ All Plaintiffs complain that they "never received written confirmation of the approval of [their] application[s] for a HAMP modification," and eventually went through foreclosures.[12]

---

[9] 374, 392, 410, 429, 448, 467, 486, 505, 524, 543, 562, 581, 599, 618, 637, 656, 675, 694, 713, 732, 751, 770, 789, 808, 827, 846, 865, 884, 903, 922, 941, 960, 979, 998, 1017, 1036, 1055, 1074, 1093, 1112, 1131, 1151, 1171, 1191, 1210, 1229, 1248, 1267, 1286, 1304, 1322, 1341.

[9] *Id.* at ¶¶ 45, 63, 82, 101, 120, 139, 158, 177, 196, 214, 232, 250, 268, 286, 304, 322, 340, 358, 376, 394, 412, 431, 450, 469, 488, 507, 526, 545, 564, 583, 601, 620, 639, 658, 677, 696, 715, 734, 753, 772, 791, 810, 829, 848, 867, 886, 905, 924, 943, 962, 981, 1000, 1019, 1038, 1057, 1076, 1095, 1114, 1133, 1153, 1173, 1193, 1212, 1231, 1250, 1269, 1288, 1306, 1324, 1343.

[10] *Id.* at ¶¶ 51, 54, 73, 92, 111, 130, 149, 168, 187, 205, 223, 241, 259, 277, 295, 313, 331, 349, 367, 385, 403, 422, 441, 460, 479, 498, 517, 536, 555, 574, 592, 611, 630, 649, 668, 687, 706, 725, 744, 763, 782, 801, 820, 839, 858, 877, 896, 915, 934, 953, 972, 991, 1010, 1029, 1048, 1067, 1086, 1105, 1124, 1144, 1164, 1184, 1203, 1222, 1241, 1260, 1279, 1298, 1315, 1334, 1353.

[11] *Id.* at ¶¶ 48, 67, 86, 105, 124, 143, 162, 181, 200, 218, 236, 254, 272, 290, 308, 326, 344, 362, 380, 398, 416, 435, 454, 473, 492, 511, 530, 549, 568, 587, 605, 624, 643, 662, 681, 700, 719, 738, 757, 776, 795, 814, 833, 852, 871, 890, 909, 928, 947, 966, 985, 1004, 1023, 1042, 1061, 1080, 1099, 1118, 1137, 1157, 1177, 1197, 1216, 1235, 1254, 1273, 1292, 1309, 1328, 1347 (alleging trial payments were posted to an "unapplied account"); MAKING HOME AFFORDABLE PROGRAM HANDBOOK FOR SERVICERS OF NON-GSE MORTGAGES v5.1 129 (May 26, 2016) (requiring servicers to hold HAMP trial period payments in a "custodial account," and "when the total of the reduced payments held as 'unapplied funds' is equal to a full PITI [principal, interest, tax and insurance] payment, the servicer is required to apply all full payments to the mortgage loan"), *https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_51.pdf.*

[12] *Id.* at ¶¶ 47, 66, 85, 104, 123, 142, 161, 180, 199, 217, 235, 253, 271, 289, 307, 325, 343, 361,

42397709;1

## C.     Procedural Posture

This case originated in two actions filed in the Thirteenth Judicial District in Hillsborough County, Florida, and removed to this District. *See Paz et al. v. Bank of Am., N.A.*, No. 8:16-cv-3384-SCB-AEP (M.D. Fla. 2016); *Alonso et al. v. Bank of Am., N.A.*, No. 8:17-cv-0238-VMC-MAP (M.D. Fla. 2017). Most of the Plaintiffs here were previously Plaintiffs in *Paz* or *Alonso*. On February 21, 2017, Judge Covington denied Plaintiffs' motion to remand *Alonso* to state court. *See* ECF No. 4 Ex. A. Plaintiffs responded by voluntarily dismissing both actions for the asserted purpose of "consolidat[ing] and refil[ing]" them in the form of the instant case, although they have not explained why a new action was necessary to serve this purpose considering they had already filed a motion to consolidate the two cases on the *Paz* docket.[13]

Plaintiffs purported to serve Bank of America with the Complaint on July 3, 2017. The Complaint asserts two claims for relief. Count I, for common-law fraud (Compl. ¶¶ 1354-68), is based on allegations that Bank of America made "false statements of fact" to Plaintiffs about HAMP, specifically statements that: (i) "default or delinquency" was necessary "in order to be eligible for HAMP," (ii) "Plaintiffs were required to pay trial payments before being eligible for a HAMP modification," (iii) Plaintiffs were "approved" for trial plans; and (iv) Plaintiffs' application "documents were not received, were incomplete, or were not current." *Id.* at ¶¶ 45, 1356-58. Plaintiffs also assert a claim under FDUTPA, Fla. Stat. § 501.201 *et seq.* (Count II, Compl. ¶¶ 1369-80), despite acknowledging the statute's "safe harbor" excluding national banks like Bank of America from its coverage, which they simply urge this Court not to apply.

---

379, 397, 415, 434, 453, 472, 491, 510, 529, 548, 567, 586, 604, 623, 642, 661, 680, 699, 718, 737, 756, 775, 794, 813, 832, 851, 870, 889, 908, 927, 946, 965, 984, 1003, 1022, 1041, 1060, 1079, 1098, 1117, 1136, 1156, 1176, 1196, 1215, 1234, 1253, 1272, 1291, 1308, 1327, 1346.

[13] *Id.* at 2; *see Paz*, No. 16-3384, ECF Nos. 25, 29-30; *Alonso*, No. 17-0238, ECF Nos. 33-34.

## LEGAL STANDARD

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6) if it fails to "contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, Plaintiffs must make "allegations plausibly suggesting (not merely consistent with)" a valid claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Because Plaintiffs' claims sound in fraud, FED. R. CIV. P. 9(b) requires them to allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).

Claims are properly joined only if they "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and share a common "question of law or fact." FED. R. CIV. P. 20(a)(1). The Rule "refers to the *same* transaction or occurrence[,] not to *similar* transactions or occurrences." *Hartley v. Clark*, 2010 WL 1187880, at *3 (N.D. Fla. Feb. 12, 2010) (emphasis added). When claims are not permissibly joined, the Court may drop the misjoined parties (*see* FED. R. CIV. P. 21), and it enjoys considerable discretion to do so in the interests of judicial economy even if the requirements of Rule 20 *are* met. *See, e.g.*, *Barber v. Am.'s Wholesale Lender*, 289 F.R.D. 364, 368 (M.D. Fl. 2013).

## ARGUMENT

## I.

## PLAINTIFFS ARE NOT PROPERLY JOINED IN A SINGLE LAWSUIT.

Plaintiffs explain their decision to bring this lawsuit by citing the denial of class certification in an MDL asserting similar claims. *Compl.* ¶ 36-37; *see HAMP*, 2013 WL 4759649, *supra*. Plaintiffs even quote the case as holding that the claims "rest on so many

individual factual questions that they cannot sensibly be adjudicated on a classwide basis," and state that "[i]t is now up to individual borrowers to file individual lawsuits to recover damages" arising from HAMP-related claims. Compl. ¶¶ 36-37. But joinder, just like class certification, requires "common" "question[s] of law or fact," as well as claims that arise from "the *same* transaction or occurrence." *Hartley*, 2010 WL 1187880, at *3-4 (emphasis added). The "individual factual questions" that foreclosed class certification in *HAMP*—such as, at the most basic level, "whether each plaintiff performed under" the HAMP trial plans—are also at issue here, along with numerous other individual questions. *HAMP*, 2013 WL 4759649, at *13-14.

Plaintiffs' claims involve (i) different statements about the modification process made by (ii) different bank employees to (iii) different Plaintiffs, (iv) different HAMP applications with (v) different supporting financial documentation, and (vi) actions taken over at least a nine-year period. Each claim will require an investigation into the words said by as many as seventy different bank employees, including their state of mind and the state of mind of each Plaintiff. *See Hepp v. Paul Revere Life Ins. Co.*, 120 F. Supp. 3d 1328, 1346 (M.D. Fla. 2015) (to prevail on fraud claim, defendant must know they are making false statements, and plaintiff must rely on false statements). A claim that "Jorge" made a false statement to Mr. Salazar (Compl. ¶ 209) will require an entirely different factual showing than a claim that "Carol" made a false statement to Mr. and Ms. Rostgaard (*id.* at ¶ 263). Resolving whether Mr. Salazar relied on the specific statement made to him will not resolve the question whether Mr. and Ms. Rostgaard relied on the specific statement made to them. This analysis applies to every plaintiff, as they all complain about statements made by different bank employees.[14] Plaintiffs' claims that they all sought

---

[14] *See* Compl. ¶¶ 41, 58, 77, 96, 115, 134, 153, 172, 191, 209, 227, 245, 263, 281, 299, 317, 335, 353, 371, 389, 407, 426, 445, 464, 483, 502, 521, 540, 559, 578, 596, 615, 634, 653, 672, 691, 710, 729, 748, 767, 786, 805, 824, 843, 862, 881, 900, 919, 938, 957, 976, 995, 1014, 1033,

HAMP loan modifications may or may not describe "similar" transactions, but they do *not* describe "the same transaction." *Hartley*, *supra*.

Courts in this jurisdiction and elsewhere have repeatedly severed misjoined claims in similar circumstances. For example, the Court in *Guzman v. Wells Fargo Bank, N.A.* severed eight plaintiffs' claims arising from Wells Fargo's "handling of loan modification packages," noting that "[t]he Complaint describes, in varying detail, how each individual submitted a loan modification package, the foreclosure proceedings related to his or her home, and the various interactions he or she had with Defendant," and concluding that "[t]he fact each of the Plaintiffs allegedly entered into a loan modification agreement with Defendant at some point in the last two-and-a-half years in no way demonstrates the claims arise from the same series of transactions or occurrences." No. 16-21423, ECF No. 26, at 1, 3 (S.D. Fla. June 22, 2016) (internal citations omitted). Similarly, *Barber* severed eighteen plaintiffs' claims against mortgage lenders because each loan involved "different loan documents, different dates, and different operative factual scenarios" and claims centered around "the statements made by each Defendant, the knowledge of each Plaintiff, [and] the date of each transaction." 289 F.R.D. at 367, 369.[15] In each case, courts have reasoned that claims arising from different borrowers' loans

---

1052, 1071, 1090, 1109, 1128, 1148, 1168, 1188, 1207, 1226, 1245, 1264, 1283, 1302, 1338.

[15] *See also*, *e.g.*, *Null v. GMAC Mortg. Corp.*, ECF No. 46, at 2 (M.D. Fla. Aug. 20 2004) (severing sixty plaintiffs' claims because the case arose from thirty-seven different loans made over an eleven month period for different parcels of property in different counties in Florida); *White v. Greenpoint Mortg. Funding Inc.*, 2014 WL 11370418, at *1-2 (S.D. Fla. June 26, 2014) (severing twenty-four plaintiffs because their claims arose from separate mortgage loans "and, thus, separate transactions."), *aff'd*, 599 F. App'x 329 (11th Cir. 2015); *Green v. Citimortgage, Inc.*, 2013 WL 6712482, at *5 (E.D.N.Y. Dec. 18, 2013) (severing claims of fraudulent misrepresentation stemming from HAMP applications because the case involved at least twenty-six distinct loans attached to twenty-six separate properties, and separate applications for HAMP modifications over a five and a half year period); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 229 (E.D.N.Y. 2013) ("[C]laims by plaintiffs who engaged in separate loan transactions by the same lender cannot be joined in a single action."); *Garner v. Bank of Am.*

or loan-modification attempts necessarily involve different sets of operative facts, even if the claims are pled similarly and present "similar legal issues." *See id*. at 367 ("While Plaintiffs' claims may raise similar legal issues, they are not logically related because they do not arise from common operative facts."). The same applies here.

*Green* involved claims pursuing exactly the same theories pursued by Plaintiffs here, *e.g.*, that the defendants had "a fraudulent loan modification program, purporting to offer the possibility of a loan modification agreement to the Plaintiffs and other homeowners, while driving [them] into default to enable Defendants to pursue foreclosure against those same homeowners." 2013 WL 6712482, at *3; *accord*, *e.g.*, Compl. ¶ 41 (alleging that Bank of America's representations about loan modifications were "false and specifically designed by BOA to set [Plaintiffs] up for foreclosure"). The court found that these transactions did not "arise out of[] the same 'transaction' or 'occurrence'" because, among other reasons, each plaintiff "separately applied for loan modifications" and the terms of the trial modifications differed from plaintiff to plaintiff. *Green*, 2013 WL 6712482, at *5. The court concluded:

> Inasmuch as each plaintiff's claims appear to arise out of a mortgage-related transaction that is distinct from the transactions on which the other plaintiffs' claims are based, and as each plaintiffs claims implicate distinct loans, locations, dates and personnel, there is no meaningful economy of scale gained by trying the cases together. There will be little, if any, overlapping discovery and each plaintiff's claims will require distinct witnesses and documentary proof. The interest in economy is affirmatively disserved by forcing these many parties to attend a common trial at which these separate, unrelated claims would be resolved. Furthermore, settlement of the claims is likely to be facilitated if the claims relating to discrete loan transactions are litigated separately.

*Id*. at *6 (internal brackets, quotation marks, and citations omitted).

Under these circumstances, even if Plaintiffs *had* satisfied the joinder requirements of Rule 20, severance would still be proper. *See Barber*, 289 F.R.D. at 368 ("Even if joinder was

---

*Corp.,* 2014 WL 1945142, at *4 (D. Nev. May 13, 2014) (severing loan modification claims as based on distinct loan transactions, distinct properties, and distinct interactions with defendants).

42397709;1

technically appropriate under Rule 20(a), considerations of judicial economy, case management, prejudice to parties, and fundamental fairness dictate that Plaintiffs' claims be severed under Rule 21."). Under Rule 21, courts look to four factors to determine if claims should be severed: "(1) the interest of avoiding prejudice and delay; (2) ensuring judicial economy; (3) safeguarding principles of fundamental fairness; and (4) whether different witnesses and documentary proof would be required for plaintiffs' claims." *Hofmann v. EMI Resorts, Inc.*, 2010 WL 9034908, at *1 (S.D. Fla. July 21, 2010) (internal quotation marks omitted).

Plaintiffs have already conceded there will be no gains in judicial economy from their joinder. The case-management report they filed in *Alonso* proposed an "Estimated Length of Trial" of "3 Days Per Plaintiff"—which would total 210 trial days in the current case with 70 Plaintiffs. *Alonso*, ECF No. 20 at 2. Such an action that "involves so many plaintiffs and loan transactions . . . will be manifestly inefficient and unwieldy" and a nightmare in terms of judicial economy. *Null*, *supra* n.15, at 3; *see also Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 559 (S.D.N.Y. 2013) ("Insamuch as each plaintiff's claims appear to arise out of a mortgage-related transaction that is distinct from the transactions on which the other plaintiffs' claims are based, and as each plaintiff's claims implicate distinct loans, locations, dates, and personnel, there is no meaningful economy of scale gained by trying these cases together."); *Barber*, 289 F.R.D. at 368-69 ("The fact-specific nature of the claims and defenses that have been, or will be, raised by the parties, precludes any conclusion that judicial economy would be served by joinder.").

Relatedly, it is plain that "different witnesses and documentary proof" will be required to adjudicate the 70 different individual cases joined here. *Green*, *supra*. Further, "given that each plaintiff's case arises out of a different loan transaction . . . [a] joint trial 'could lead to confusion of the jury' and thereby prejudice defendants." *Kalie*, 297 F.R.D. at 559 (citation omitted). In

brief, the underlying facts of each Plaintiff's claims will necessarily differ, making their mass joinder improper. The only thing they have in common is the vague way in which they are pled and the threshold legal defects that justify their dismissal under Rule 12(b)(6), as set forth below.

## II.

## PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Florida law imposes a four-year limitations period for any "legal or equitable action founded on fraud." Fla. Stat. § 95.11(3)(j). The same four-year period applies to any "action founded on a statutory liability," which includes Plaintiffs' FDUTPA claim. *Id.* § 95.11(3)(f); *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 (Fla. 1st DCA 2010). Many Plaintiffs don't describe a *single event* that took place fewer than four years ago.

Thirty plaintiffs complain about foreclosures more than four years before they filed suit, with nothing pleaded about anything that happened after that.[16] But the limitations period here began to run even before the foreclosures. All but three of the 109 Plaintiffs base their claims on trial plans dating from 2012 or earlier.[17] The remaining three (David Figueroa and Lazara Sosa, and Javier Clavelo) appear to have trial plans dated more recently, but nevertheless claim to be the victims of frauds prior to the limitations period, such as "impermissible" property inspection fees assessed between 2010 and 2012. *Id.* at ¶¶ 1206, 1219, 1301, 1312. And every Plaintiff but

---

[16] *See* Compl. ¶ 126 (September 24, 2010), ¶ 164 (May 1, 2012), ¶ 183 (July 11, 2012), ¶ 202 (July 14, 2010), ¶ 256 (December 18, 2012), ¶ 310 (February 16, 2012), ¶ 328 (May 19, 2009), ¶ 346 (October 1, 2009), ¶ 382 (September 27, 2011), ¶ 475 (August 26, 2010), ¶ 532 (December 1, 2011), ¶ 551 (December 18, 2012), ¶ 607 (October 25, 2011), ¶ 683 (October 25, 2012), ¶ 721 (March 28, 2012), ¶ 740 (April 18, 2012), ¶ 759 (June 10, 2013), ¶ 797 (October 13, 2012), ¶ 835 (June 26, 2012), ¶ 873 (April 28, 2010), ¶ 911 (July 19, 2012), ¶ 949 (May 10, 2012), ¶ 987 (October 30, 2012), ¶ 1025 (July 8, 2011), ¶ 1063 (December 28, 2012) ¶ 1082 (May 16, 2012); ¶ 1160 (January 5, 2012), ¶ 1199 (June 8, 2010), ¶ 1256 (April 12, 2012), ¶ 1349 (June 19, 2012).

[17] *Id.* at ¶¶ 47, 65, 84, 103, 122, 141, 160, 179, 198, 216, 234, 252, 270, 288, 306, 324, 342, 360, 378, 396, 414, 433, 452, 471, 490, 509, 528, 547, 566, 585, 608, 622, 641, 660, 679, 698, 717, 736, 755, 774, 793, 812, 831, 850, 869, 888, 907, 926, 945, 964, 983, 1002, 1021, 1040, 1059, 1078, 1097, 1116, 1135, 1155, 1175, 1195, 1233, 1252, 1271, 1290, 1326, 1345.

Figueroa and Sosa bases their claims on the allegation that they were falsely told in the 2009–March 2013 period that they needed to be in default to qualify for HAMP—all time-barred.[18]

At any of those moments, Plaintiffs would have been on inquiry notice of their claims and known enough to investigate whether they were wronged. The limitations period begins to run when "the fraud is discovered, or when by the exercise of reasonable diligence it might have been discovered." *Westchester Corp. v. Peat, Marwick, Mitchell & Co.*, 626 F.2d 1212, 1217 (5th Cir. 1980); *accord*, *e.g.*, *Jeunesse, LLC v. Lifewave, Inc.*, 2015 WL 4911349, at *3 (M.D. Fla. Aug. 17, 2015). A borrower exercising reasonable diligence would not have needed to wait until 2017 to investigate a claim based on foreclosures that happened in 2012 or earlier or alleged misrepresentations made even before that. Nearly all of the Plaintiffs assert a fraud claim based on what they claim were "false" representations made to them outside the limitations period that they needed to be in default to qualify for HAMP. Insofar as the representation was "false" at all, Plaintiffs could have discovered that fact through "the exercise of reasonable diligence" back when the statements were made. HAMP's requirements are not secret. They are posted on the Treasury Department web site, and state clearly (on page one!) that HAMP modifications are available to "at-risk homeowners—both those who are in default and those who are at imminent risk of default."[19] Naturally, Plaintiffs' ability to discover the basis for their claims this far back defeats any claim that they are entitled to have the statute of limitations tolled.

---

[18] *Id*. at ¶¶ 41, 58, 77, 96, 115, 134, 153, 172, 191, 209, 227, 245, 263, 281, 299, 317, 335, 353, 371, 389, 407, 426, 445, 464, 483, 502, 521, 540, 559, 578, 596, 615, 634, 653, 672, 691, 710, 729, 748, 767, 786, 805, 824, 843, 862, 881, 900, 919, 938, 957, 976, 995, 1014, 1033, 1052, 1071, 1090, 1109, 1128, 1148, 1168, 1188, 1226, 1245, 1264, 1283, 1302, 1319, 1338.

[19] U.S. Dep't of Treasury, HAMP Supplemental Directive (SD) 09-01 (Apr. 6, 2009), at 1, *https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf*; *see also id*. at 2 (servicer must verify that "[t]he mortgage loan is delinquent or default is reasonably foreseeable"), *id*. at 3-4 (borrowers not in default "must be screened for imminent default" and "[t]he servicer must make a determination as to whether a payment default is imminent based on the servicer's standards for imminent default").

42397709;1

# III.

## VAGUE ALLEGATIONS OF DISSATISFACTION OVER PLAINTIFFS' FAILURE TO QUALIFY FOR LOAN MODIFICATIONS DO NOT STATE A CLAIM FOR FRAUD.

Plaintiffs fail to plead their claim of fraud, much less so to plead it with the particularity required by Rule 9(b). "The 'essential elements' of common law fraud under Florida law are: '(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.'" *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 720 (11th Cir. 2011). Here, the complaint alleges most of the elements only in conclusory, boilerplate terms (and the second element not at all).

### A. Plaintiffs Fail to Plead that Anyone Misrepresented HAMP Requirements.

The first alleged "false statement[s] of fact" are the alleged "statements made by BOA to Plaintiffs that . . . default or delinquency on his/her mortgage [was necessary] in order to be eligible for HAMP." Compl. ¶ 1356. Not only do Plaintiffs fail to plead these statements with the particularity required by Rule 9(b), they fail to plead any falsity. Plaintiffs *admit* that "[i]n order to qualify under HAMP," "[d]efault must be reasonably foreseeable, and the borrower is able to demonstrate financial hardship, including that the borrower has insufficient liquid assets to make the now-required monthly payments." Compl. ¶ 14; *see also supra* n.8 (describing the Treasury Department requirement for default or "imminent default"). There are no facts pleaded in the Complaint that would permit an inference that any one of the Plaintiffs was given contrary information. The allegations of the Complaint are fully consistent with Plaintiffs' having been told (accurately) that default or "imminent default" is necessary to qualify for HAMP.

Numerous courts have rejected identical claims as insufficient to plead an actionable

misrepresentation. *E.g.*, *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) ("Nor have [plaintiffs] alleged that Wells Fargo's statement that [plaintiffs] needed to be delinquent in order to qualify . . . was false or that they would have been eligible for HAMP absent default."); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797 (D. Md. 2013) ("Plaintiffs' allegations do not support a plausible inference that it was untrue, misleading, or deceptive to say that Plaintiffs had to be in default . . . to be considered for a loan modification"); *Whatley v. Bank of Am., N.A.*, 2012 WL 5906709, at *3 (E.D. Cal. Nov. 26, 2012) ("Plaintiff again fails to demonstrate that the statement itself was false. In fact, it seems reasonable for Defendants to require delinquency before modifying a loan."); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 205 (D. Md. 2012) (no "misrepresentation" when plaintiff "was told that he needed to miss payments, as contemplated by the HAMP guidelines").[20]

Thus, even under basic Rule 8 pleading requirements, Plaintiffs haven't said enough about the statements made to them to "plausibly suggest[]" they were given false information. *Twombly*, 550 U.S. at 557. Under the heightened Rule 9(b) pleading requirements, it isn't even a close question. For one thing, none of the Plaintiffs describe the "precise statement." *Miccosukee*, *supra.* The only description of the statement is Plaintiffs' own self-serving paraphrase of it (oddly consistent across all seventy Plaintiffs) to the effect that a "BOA loan representative" "advised" Plaintiffs "to refrain from making [their] regular mortgage payments because "being past due and in default on their mortgage loan was a perquisite [*sic*] for a HAMP modification." *E.g.*, Compl. ¶ 41. This description is too vague to describe what Plaintiffs might actually have been told. Plaintiffs don't specify whether they were told that *nobody* could qualify for HAMP without being in default or merely whether borrowers in *their circumstances* would

---

[20] *See also*, *e.g.*, *Traynor v. Chase Home Fin., L.L.C.*, 2013 WL 704932, at *12 (N.D. Tex. Feb. 27, 2013); *Lyons v. Bank of Am., N.A.*, 2011 WL 6303390, at *5 (N.D. Cal. Dec. 16, 2011).

42397709;1

not qualify for HAMP without being in default, which are two entirely different statements. The description of the statement in the body of the complaint (*id*. at ¶ 41 *et al.*) is also inconsistent with the description of the statement in their claim for relief (¶ 1356), the latter of which does not make any mention of Plaintiffs' being "advised" to go into default. Plaintiffs also fail to plead "what the Defendants gained by the alleged fraud." *Miccosukee*, *supra*. Their conclusory allegation that the statements were "specifically designed by BOA to set [Plaintiffs] up for foreclosure" (*e.g.*, Compl. ¶ 41) lacks factual support, and does not describe a "gain" absent facts plausibly suggesting that the bank makes more money from a foreclosure than a performing loan.

Plaintiffs do not allege the other elements of the fraud claim, either—in some cases, not even in boilerplate. Nothing is alleged to suggest that whatever each bank employee said about HAMP's requirements was "known by the person making the statement to be false at the time it was made." *State Farm*, 427 F. App'x at 720. No facts are pleaded to indicate the statements were "made for the purpose of inducing another to act in reliance thereon." *Id*. The pleaded facts indicate nothing more than that Plaintiffs *chose* to default in hopes of qualifying for relief. That is not "induc[ement]" by the bank.[21] Finally, no facts are pleaded to indicate any actual "action" by Plaintiffs "in reliance on the correctness of the statement," nor any "resulting damages." *State Farm*, 427 F. App'x at 720. Plaintiffs' allegation that they went into default to qualify for HAMP does not reflect any detrimental reliance or harm. If Plaintiffs were facing an imminent default, then their default does not reflect "reliance" on statements made by Bank of America.

---

[21] *See, e.g.*, *Fevinger v. Bank of Am., N.A.*, 2014 WL 3866077, at *5 (N.D. Cal. Aug. 4, 2014) ("The core of [plaintiff's] pleadings on this cause of action remains the contention that [Bank of America] told her she could obtain a loan modification by going late on her payments. This does not rise above the level of encouragement. The choice to pay or not to pay remained with [plaintiff].") (internal quotation marks omitted); *Bing Ting Ren v. Wells Fargo Bank, N.A.*, 2013 WL 2468368, at *3 (N.D. Cal. June 7, 2013) ("[Defendant] told Plaintiff that she could enter the loan modification process by going late on her payments, but that was a choice only Plaintiff could make.").

Conversely, if Plaintiffs were *not* facing an imminent default, then they did not qualify for HAMP in the first place, and could not have been "injured" by their failure to receive something for which they did not qualify. *See also McClung v. MERS, Inc.*, 2012 WL 1642209, at *8-9 (N.D. Ala. May 7, 2012) (finding that plaintiffs "have provided no more than a conclusory allegation that they incurred injury" stemming from defendant's alleged misrepresentation that "plaintiffs would be eligible for a modification if they were in default for ninety days.").

The other allegation Plaintiffs make about Bank of America supposedly misrepresenting HAMP requirements is easily dispensed with. Plaintiffs say it was "false" to tell them "that Plaintiffs were required to pay trial payments before being eligible for a HAMP modification." Compl. ¶ 1357. But elsewhere, Plaintiffs admit that HAMP requires a "Trial Payment Period during which mortgage payments are made under the terms of the modification" and that borrowers must make "timely payments . . . during those three months" in order to "be offered a permanent modification." *Id.* at ¶ 15. So it was *true* that "Plaintiffs were required to pay trial payments before being eligible for a HAMP modification." Compl. ¶ 1357.

## B.     Plaintiffs Fail to Plead They Were Falsely Given Trial Plan Approvals.

Plaintiffs next accuse Bank of America of making "false" statements that they were "approved" for trial plans, alleging in each case that "[t]his statement was false as the application wasn't approved." *E.g.*, Compl. ¶ 45. Plaintiffs plead no actual facts suggesting the statements were false or supporting their naked claims that their trial plans weren't really approved.

But even if this statement were somehow construed as false, it suffers from the same infirmities as Plaintiffs' other fraud allegations in terms of Rule 9(b) and the other elements of the claim. None plead any act of reliance on what they were told. Making trial payments is not reliance as a matter of law, because Plaintiffs were *already* obligated to make even higher loan payments under the terms of their original loan documents. *See*, *e.g.*, *Pennington v. HSBC Bank*

*USA, N.A.*, 493 F. App'x 548, 557 (5th Cir. 2012) ("TPP payments [do not] constitute detrimental reliance because they were just applied to the loan").[22]

Finally, Plaintiffs plead no damages "resulting" from any of the bank's statements. *State Farm*, *supra*. Allegations of foreclosures and "the loss of future equity" (*e.g.*, Compl. ¶ 54) do not describe any harm "resulting" from anything Bank of America did. Those are the consequences of Plaintiffs' own defaults. As one court held in rejecting an identical allegation:

> Plaintiff . . . describes his damages as the "loss of the subject property [and] future use and enjoyment of that property. . . ." The problem with these allegations is that, by the time Plaintiff was told he could submit documentation . . . , he had already been in default on his loan payments for many months. . . . As such, it was not the alleged misrepresentation that plausibly led to Plaintiff's damages; it was his own default.

*McReynolds v. HSBC Bank USA*, 2012 WL 5868945, at *4 (N.D. Cal. Nov. 19, 2012). The only scenario in which such damages could be attributed to any conduct by Bank of America is if Plaintiffs qualified for permanent loan modifications but were wrongfully denied. And yet Plaintiffs do not make that claim *even in conclusory terms*. Plaintiffs merely allege that they "never received . . . approval," but *nowhere* allege that their failure to be approved was erroneous, much less fraudulent.[23] Similarly, their theory that they were injured to the tune of

---

[22] *See also*, *e.g.*, *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1346-48 (S.D. Fla. 2011) (finding HAMP trial payments were "preexisting obligations" under the terms of the original loan, and thus not a legal "detriment"); *Ortiz v. Am.'s Servicing Co.*, 2012 WL 2160953, at *6-7 (C.D. Cal. June 11, 2012) ("making payments . . . is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 857 (D. Minn. 2012) (no detrimental reliance from trial payments because plaintiff "had a legal duty to make payments on the [original] Note"); *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1071 (D. Alaska 2012) ("Plaintiff was already obligated to pay those amounts (if not more) under the [original] Note."); *Osmond v. Litton Loan Serv., LLC*, 2011 WL 1988403, at *3 (D. Utah May 20, 2011) (no reliance because plaintiff "does not demonstrate that she did something that she would not have done if Defendants had not made a promise").

[23] Compl. ¶¶ 47, 66, 85, 104, 123, 142, 161, 180, 199, 217, 235, 253, 271, 289, 307, 325, 343, 361, 379, 397, 415, 434, 453, 472, 491, 510, 529, 548, 567, 586, 604, 623, 642, 661, 680, 699, 718, 737, 756, 775, 794, 813, 832, 851, 870, 889, 908, 927, 946, 965, 984, 1003, 1022, 1041, 1060, 1079,

"the costs for sending their HAMP applications" (e.g., Compl. ¶ 54) would not have been a detriment at all if Plaintiffs had managed to qualify for HAMP, and thus it is not an injury absent well-pleaded facts to indicate that their failure to qualify was the result of misstatements by Bank of America, as opposed to the actual qualification requirements.

## C.     Plaintiffs Fail to Plead False Incompleteness Notices.

Finally, Plaintiffs allege that they "were falsely informed by BOA employees that their documents were not received, were incomplete[,] or were not current, forcing Plaintiffs to resubmit the information again." Compl. ¶ 1358. Again, Plaintiffs do not actually substantiate their claim that these alleged statements were false, and fail in any event to describe them with the particularity required by Rule 9(b).

For the statement that Plaintiffs' applications "were incomplete or were not current" to be false, Plaintiffs must be able to allege that their applications *were* complete and current. Plaintiffs do this only in boilerplate. *E.g.*, Compl. ¶ 41 (alleging that the Torreses "properly completed the application"). Such conclusory allegations—saying nothing about what documents were asked of them, what documents they supplied, and when—are not enough to establish the falsity of the statements at issue, much less the other elements of fraud. *See*, *e.g.*, *Temple v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 1444660, at *6 (N.D. Cal. Oct. 23, 2015) (rejecting "conclusory allegations about intent to deceive and why the statements were false" because "[t]he sole fact that defendants asked the [plaintiffs] to resubmit their applications is not enough to plausibly allege that defendants made false representations, knew the representations were false, and intended to deceive").[24]

---

1098, 1117, 1136, 1156, 1176, 1196, 1215, 1234, 1253, 1272, 1291, 1308, 1327, 1346.

[24] *See also*, *e.g.*, *U.S. Bank, N.A. v. Flores*, 2014 U.S. Dist. LEXIS 91395, at *14 (S.D. Tex. July 1, 2014) (allegations that plaintiff "'was required to submit certain paperwork and when she did,

In any event, the allegations at issue do not comply with Rule 9(b). Plaintiffs do not identify the "person[s] responsible for the statement[s]" (*Miccosukee*, *supra*), instead referring to them generically as "BOA employees." E.g., Compl. ¶¶ 42, 1358. That is fatal. *See*, *e.g.*, *Azar v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 5648880, at *4 (M.D. Fla. July 16, 2010) (dismissing fraud claim for failure to specify "which agents or representatives of Defendant [] made the statements"). Nor do plaintiffs identify the "time and place" that these statements were made (*Miccosukee*, *supra*), not even in the most general manner. Plaintiffs also fail to allege that the purportedly false statements were "known by the person making the statement to be false at the time it was made." *State Farm*, 427 F. App'x at 720.

Finally, Plaintiffs are entirely silent when it comes to "what the Defendants gained by the alleged fraud" in these instances (*Miccosukee*, *supra*), or even what the Defendant *could* have gained. Plaintiffs' entire (unfounded) theory of liability in this case is that Bank of America was using HAMP trial plans to reap "fraudulent profits" and redirect trial payments to "fraudulent . . . fees." Compl. ¶¶ 34, 45. If that were the case (and of course the Complaint provides no basis for supposing that it is), then Bank of America would stand to gain nothing from *delaying* the very trial plans that are proffered as the source of its "fraudulent profits."

This encapsulates perfectly the defects that plague the Complaint from top to bottom. There is no rhyme or reason to Plaintiffs' allegations—everything ever said to them is alleged to be a lie, and everything ever done is alleged to have been done for the most nefarious possible motives, even at the cost of internal coherency. Plaintiffs make all these allegations so that they can declare with a show of certitude, but without any factual support, that "BOA had no intention" of even *considering* their applications. Compl. ¶ 34. It is premature at this stage to

---

she would either hear nothing from Wells Fargo, or she would be asked to resubmit the same paperwork for some unknown reason'" "fails as a claim for fraud").

42397709;1

point to the hundreds of thousands of borrowers whose successful loan-modification outcomes with Bank of America prove otherwise. It is enough for present purposes to note that Plaintiffs' allegations of fraud and ill intent are not substantiated with anything besides overheated rhetoric.

## IV.

### PLAINTIFF'S FDUTPA CLAIM MUST BE
### DISMISSED BECAUSE THE STATUTE DOES NOT APPLY.

Plaintiffs' FDUTPA claim fails because "FDUTPA specifically excludes federally regulated banks from its coverage." *De Leon v. Bank of Am., N.A.*, 2009 WL 3822392, at *5 (M.D. Fla. Nov. 16, 2009) (citing Fla. Stat. § 501.212(4)(c)). Plaintiffs concede Bank of America is a federally regulated bank in the caption of the Complaint, because it is (correctly) named as "Bank of America, N.A.," and "[t]here can be no dispute that 'N.A.' stands for 'National Bank.'" *George v. Wells Fargo Bank, N.A.*, 2014 WL 61487, at *5 (S.D. Fla. Jan. 8, 2014).

Plaintiffs acknowledge this statutory exclusion but simply urge the Court not to respect it on the ground that "BOA's actions, as alleged herein . . . encompasses [*sic*] a knowing and willful fraudulent scheme." Compl. ¶ 1371. Plaintiffs say this as though it were an actual statutory exclusion, but it isn't. The language of § 501.212 is without exception, and does not cease to apply whenever a plaintiff accuses a defendant of fraud. The very *essence* of a FDUTPA claim is "unfair or deceptive acts or practices," which entails "conduct that offends established public policy" and is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000); *Suris v. Gilmore Liquidating, Inc.*, 651 So. 2d 1282, 1283 (Fla. 3d DCA 1995). If accusations of such were enough to invalidate § 501.212's safe harbor, then the safe harbor would never apply.

The test courts apply in determining whether Section 501.212 shields a defendant from liability is "(1) whether the party is regulated by a federal agency and, if so, (2) whether the

activity at issue is subject to the federal regulatory authority." *Regions Bank v. Legal Outsource PA*, 2015 U.S. Dist. LEXIS 162248, at *13 (M.D. Fla. Dec. 3, 2015). Neither of these points is in any dispute. As a national bank, Bank of America is regulated by multiple federal agencies, and Plaintiffs *concede* the activity challenged here is subject to "federal regulatory authority." *See* Compl. ¶¶ 19-21 (alleging that Bank of America's HAMP activities are subject to "regulatory inquiries" and accusing the bank of "deceiv[ing] those . . . regulators" and "Federal Government agencies"), ¶ 30 (alleging that "Bank of America reported to the Treasury Department" on HAMP). Indeed, Plaintiff's FDUTPA claim is expressly based on Bank of America's alleged failure "to follow the directives under [the] 'Servicer Participation Agreement' which it agreed to and executed with the Federal Government" and the other Treasury directives. *Id.* at ¶ 1375. It is thus clear from the face of the Complaint that the challenged conduct "is subject to the federal regulatory authority." *Regions Bank*, *supra*. The FDUTPA claim must be dismissed.

## V.

### EVEN SETTING OTHER DEFECTS ASIDE, BOTH CLAIMS FAIL AS AN IMPERMISSIBLE ATTEMPT TO ENFORCE HAMP GUIDELINES.

Plaintiffs' assertions that Bank of America supposedly failed "to follow the directives" promulgated by the Treasury Department governing HAMP has another, equally fatal implication on both of Plaintiffs' claims. The Eleventh Circuit has held that plaintiffs "lack[] standing to pursue . . . claims insofar as they are premised on an alleged breach of [the defendant's] HAMP obligations," because HAMP itself confers no private right of action. *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116-17 (11th Cir. 2012).

Courts in this Circuit have accordingly rejected all sorts of claims that represent backdoor efforts to sue for violation of HAMP guidelines. *See*, *e.g.*, *Morgan v. PNC Bank, N.A.*, 2014 WL 1922798, at *2 (S.D. Ala. May 14, 2014) ("Significantly, there should be no dispute that Plaintiff

submitted an application for a loan modification under HAMP or that her application was denied. *Miller* applies squarely to such a situation, precluding a private cause of action in such circumstances.") (internal quotation marks omitted); *Anderson v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 3756512, at *9 (N.D. Ga. Aug. 6, 2012), *report and recommendation adopted*, 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012) (claim based on alleged failure "to acknowledge, approve or deny [plaintiff's] HAMP applications" dismissed "because it amounts to no more than an effort to assert a private right of action under HAMP, which is not recognized") (citing *Miller*, 677 F.3d at 1116)); *Ligon v. BAC Home Loans Servicing, LP*, 2012 WL 4382339, at *6 (N.D. Ga. Aug. 13, 2012), *report and recommendation adopted in part and rejected in part on other grounds*, 2012 WL 4464946 (N.D. Ga. Sept. 25, 2012) ("HAMP does not give residential mortgage borrowers who engage in the loan modification process a private cause of action based on refusal to grant a permanent loan modification, and 'it is clear that no implied right of action exists' under HAMP") (quoting *Miller*, 677 F.3d at 1116-17).

Plaintiffs' claims squarely fall into this category, as they accuse Bank of America of "refusing to follow the directives" of the Treasury Department (Compl. ¶ 1377), "avoiding the directives and requirements of HAMP" (*id.* at ¶ 1377), and failing to "honor[] its contract with the Federal Government" (*id.* at ¶ 19). Not only does *Miller* clearly establish that "[t]here is no private right of action under HAMP," "[t]he majority of courts have determined that homeowners are incidental beneficiaries, not intended beneficiaries, of the contract between a participating servicer and the federal government to participate in the HAMP program" and thus have no standing to claim breaches of HAMP servicer participation agreements. *Beck v. Bank of Am. Home Loans*, 2016 WL 3460382, at *3 (M.D. Ga. June 21, 2016) (quoting *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012)). And Plaintiffs do not articulate any

theory of how an alleged breach of a contract between Bank of America and the government establishes any of the elements of their claims, even if there *were* a scenario in which it were permissible to use common-law and other statutory claims to end-run Congress's refusal to confer a right of action to sue under HAMP.

**VI.**

**THE LENGTHY SHOTGUN PLEADING IS ITSELF IMPROPER.**

Even setting the merits aside, Plaintiffs' 292-page, 1380-paragraph Complaint is incapable of satisfying the "short and plain statement" requirement of Rule 8. Far shorter complaints than this have been dismissed on this basis in this District. *E.g.*, *S&B/Bibb Hines PB 3 J.V. v. Progress Energy Fla., Inc.*, 2008 WL 2275534, at *1 (M.D. Fla. June 2, 2008) (complaint of "79 pages . . . including exhibits" and "282 paragraphs of allegations" "contravenes Rule 8"); *Smith v. Rainey*, 747 F. Supp. 2d 1327, 1348-49 (M.D. Fla. 2010) (73-page complaint "is nothing short of onerous"). In this case, the impermissibly long pleading underscores the impropriety of the mass joinder. *See supra* Part I. Severed individual claims could easily be pled with the "short and plain statement" required by Rule 8.

The Complaint also violates Rule 8 because it is a shotgun pleading asserting "multiple counts where each count adopts the allegations of all preceding counts." *Frantz v. Walled*, 513 F. App'x 815, 820-21 (11th Cir. 2013); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). In this Circuit, "a party may not incorporate all allegations of each count in every successive count." *Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1210-11 (M.D. Fla. 2005). Yet here Plaintiffs incorporate in bulk "[t]he allegations in paragraphs 1 through 1353" in each count in a manner that makes it impossible to link specific "factual allegations to specific counts." *Frantz*, *supra*. This is not a mere technical deficiency, given the disconnect between Plaintiffs' account of alleged misstatements in the body of the Complaint and their different

-24-

account of alleged misstatements in the fraud claim itself. *Compare*, *e.g.*, Compl. ¶ 45 (allegedly "false" statement "Plaintiffs . . . were approved" for trial plan), *with id.* at ¶¶ 1354-1368 (no such misstatement alleged). Bank of America is entitled to a pleading that clearly specifies the grounds on which each claim rests. *See* FED. R. CIV. P. 8(a). The Complaint here does not.

## VII.

## BANK OF AMERICA IS ENTITLED TO RECOVER ITS COSTS FOR PLAINTIFFS' TWO VOLUNTARY DISMISSALS OF THE SAME ACTION.

As noted above (Background Part A), Plaintiffs characterize this action as a "consolidat[ion] and refil[ing]" of two other cases previously docketed in this Court, *Alonso* and *Paz*. ECF No. 4 at 2. Plaintiffs voluntarily dismissed those cases after Judge Covington denied their motion to remand *Alonso* to state court. Under FED. R. CIV. P. 41(d)(1), if "a plaintiff who previously dismissed an action . . . files an action based on or including the same claim against the same defendant," "the court . . . may order the plaintiff to pay all or part of the costs of the previous action." The test for awarding costs under Rule 41 is whether "(1) the plaintiff dismissed a previous action; (2) the plaintiff then commenced a second action that is based upon or includes the same claim against the same defendant; and (3) the defendant incurred costs in the prior action that will not be useful in the newly-filed litigation." *Groom v. Bank of Am.*, 2010 WL 627564, at *6-7 (M.D. Fla. Feb. 23, 2010). Plaintiffs have already conceded that the first two criteria are satisfied, and the third criterion is satisfied easily—the $600 Bank of America spent in *pro hac vice* fees and the $800 spent in filing fees to remove *Alonso* and *Paz* to federal court have no "use[]" in the presently docketed matter. Both are recoverable under Rule 41, and lacking any rationale for the dismissals and refiling except to "consolidate" the cases—which Plaintiffs had sought to do anyway via a Motion to Consolidate filed in the previous actions (No. 16-3384, ECF No. 25)—this Court should not hesitate to grant the requested relief.

Respectfully submitted this 24th day of July, 2017,

/s/ David A. Karp

David A. Karp, Fla. Bar No. 69226
Heather Fesnak, Fla. Bar No. 85884
AKERMAN LLP
401 E. Jackson St., Ste. 1700
Tampa, Fla. 33602-5250
Tel.: (813) 209-5032
david.karp@akerman.com
heather.fesnak@akerman.com

James W. McGarry (*pro hac vice* application forthcoming)
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02110
Tel: (617) 570-1000
jmcgarry@goodwinlaw.com

William P. Heller, Fla. Bar No. 987263
AKERMAN LLP
350 E. Las Olas Blvd., Ste. 1600
Fort Lauderdale, Fla. 33301
Tel.: (954) 463-2700
william.heller@akerman.com

Keith Levenberg (*pro hac vice* application forthcoming)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4248
klevenberg@goodwinlaw.com

*Counsel for Defendant Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2017, I caused a copy of this document to be served

through the Court's CM/ECF filing system on the following:

John W. Adams Jr. Esq.
1074 Bloomingdale Ave.
Valrico, FL 33596
jadams@adamslawassociation.com

/s/ David A. Karp
David A. Karp

42397709;1