UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDDIE and AWILDA TORRES,

        Plaintiffs,

v.                                                CASE NO. 8:17-cv-1534-T-26TBM

BANK OF AMERICA, N.A.,

        Defendant.
_____/

**O R D E R**

**THIS CAUSE** comes before the Court on Defendant Bank of America, N.A.'s Motion to Dismiss the Second Amended Complaint (Dkt. 21), Plaintiffs' Response in Opposition (Dkt. 28), and Defendant's Reply in Support of Motion to Dismiss (Dkt. 31). Having carefully considered the parties's submissions, together with the allegations of Plaintiffs' Second Amended Complaint, the Court finds that Defendant's Motion to Dismiss is due to be granted.

The Second Amended Complaint is based on a single fraud claim brought on behalf of Plaintiffs Eddie and Awilda Torres for alleged misrepresentations made by Defendant Bank of America's representatives in connection with Plaintiffs' defaulted

mortgage loan and their efforts to obtain a mortgage loan modification.[1] More specifically, Plaintiffs allege that they began "experiencing financial hardship" in 2009 and contacted Defendant, their mortgage servicer, "requesting a HAMP [Home Affordable Modification Program] modification." (Dkt. 20, Second Amended Complaint ("SAC"), ¶ 36).[2] They allege that "[o]n or about July 15, 2011," they were told "to refrain from making their regular mortgage payment" because "being 'past due' on their mortgage loan was a prerequisite for a HAMP modification." (Id. at ¶ 37). Plaintiffs allege that they relied on the statements and omissions and then fell into default status. (Id. at ¶ 39).

Plaintiffs allege that on or about August 5, 2011, a representative of Defendant named "George" "verbally informed" them that they were approved for a trial loan modification. (Id. at ¶ 46). They allege that "[t]his statement was false" because "the application wasn't approved." (Id.). Plaintiffs allege that they made three trial payments

---

[1] The Court dismissed Plaintiffs' two prior complaints because the first one constituted a "shotgun" pleading, see docket 15, and because the second one failed to plead fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. See docket 19. The most recent dismissal order also severed the claims of over 100 other plaintiffs the Court determined were improperly joined and directed the severed Plaintiffs to file amended complaints in separate, individual cases.

[2] As explained by the Eleventh Circuit, this program was created by the Department of the Treasury under the auspices of the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201-5261, as a consequence of the economic crisis of 2008 and "is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners." Miller v. Chase Home Fin., LLC, 677 F. 3d 1113, 1115-16 (11th Cir. 2012).

on unspecified dates in 2011—at $472.58 each, less than they were obligated to pay under the terms of their loan. (Id. at ¶ 49). They claim that making the trial payments damaged them because "BOA placed those payments in an unapplied account" instead of crediting them to their loan. (Id. at ¶ 50).

Plaintiffs allege that they had conversations with "BOA employees[] George, Maria and others" "on or about December 28, 2011." (Id., at ¶ 41). They allege that they were told on multiple occasions around this time that the documents they had submitted to qualify for a loan modification were "not current." (Id.). Plaintiffs allege that the statements made to them by Defendant's representatives were made "not for the purpose of processing Plaintiffs' application in good faith, but instead for the specific purpose of frustrating the HAMP application process to ensure a modification was ultimately declined, resulting in foreclosure." (Id. at ¶ 43). Plaintiffs do not state outright that their modification was ultimately declined, but they allege that their "home was foreclosed by Bank of New York Mellon" on May 18, 2016. (Id. at ¶ 49).

Defendant seeks dismissal of the Second Amended Complaint, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim on which relief can be granted. A complaint must be dismissed under Rule 12(b)(6) if it fails to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To meet this standard, Plaintiffs must make "allegations plausibly suggesting (not merely

consistent with)" a valid claim.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  Because Plaintiffs' claims sound in fraud, Rule 9(b), Federal Rules of Civil Procedure, requires them to allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."  Miccosukee Tribe of Indians of Fla. v. Cypress, 814 F.3d 1202, 1212 (11th Cir. 2015) (citation omitted).

Defendant urges that the Second Amended Complaint should be dismissed as time-barred and because Plaintiffs once again have failed to plead their fraud allegations with the requisite particularity.  Although the Court agrees that Plaintiffs have done very little to cure the defects that led to the dismissal of their prior complaint on Rule 9(b) grounds, allowing Plaintiffs yet another opportunity to plead their fraud claim would be an exercise in futility given that the claim is, in fact, barred by the statute of limitations.

Florida law imposes a four-year limitations period for any "legal or equitable action founded on fraud."  Fla. Stat. § 95.11(3)(j).  On its face, Plaintiffs' fraud claim stems from misrepresentations that occurred in the 2009 to 2011 period, more than four years before they filed this lawsuit in June 2017.  (See Dkt. 20, SAC,  ¶ 36 (2009 HAMP inquiry), ¶ 37 (July 2011 conversation), ¶ 41 (December 2011 conversations), ¶ 46 (August 2011 conversation), ¶ 52 (allegedly improper "property inspections" "from 2010 to 2011")).  The four-year limitations period begins to run when "the fraud is discovered,

or when by the exercise of reasonable diligence it might have been discovered." Westchester Corp. v. Peat, Marwick, Mitchell & Co., 626 F.2d 1212, 1217 (5th Cir. 1980);[3] accord Jeunesse, LLC v. Lifewave, Inc., 2015 WL 4911349, at *3 (M.D. Fla. Aug. 17, 2015). Because each of the alleged fraudulent misrepresentations concerns a matter of public knowledge, there is no reason why Plaintiffs could not have discovered the basis for their fraud claim when the relevant statements were made.

Plaintiffs' first alleged "misrepresentation" is a statement that "being 'past due' on their mortgage loan was a prerequisite for a HAMP modification eligibility." (Dkt. 20, SAC, ¶ 37). As Defendant argues, if that statement was false, Plaintiffs could have discovered such through the exercise of reasonable diligence back when the statement was made. HAMP's requirements are posted on the Treasury Department website and they state clearly (on the first page) that HAMP modifications are available to "at-risk homeowners . . . in default and those who are at imminent risk of default." U.S. Dep't of Treasury, HAMP Supplemental Directive (SD) 09-01 ("SD 09-01"), at 1 (Apr. 6, 2009); see also, id. at 2 (servicer must verify that "[t]he mortgage loan is delinquent or default is reasonably foreseeable"), id. at 3-4 (borrowers not in default "must be screened for

---

[3] In Bonner v. City of Prichard, 661 F. 2d 1206, 1209 (11th Cir.) (*en banc*), the Eleventh Circuit adopted as binding precedents all decisions of the former Fifth Circuit issued prior to October 1, 1981.

imminent default" and "[t]he servicer must make a determination as to whether a payment default is imminent based on the servicer's standards for imminent default").[4]

Plaintiffs also allege that "BOA employees fraudulently omitted th[e] fact" that HAMP trial payments are posted to "an unapplied account." (Dkt. 20, SAC, ¶ 48). Plaintiffs easily could have discovered this information in August 2011 when the offending "omission" was allegedly made. (See SD 09-01 at 18 (providing for trial payments to be held as "unapplied funds" until "equal to a full PITI payment")). As Defendant asserts, this is exactly how the Treasury Department requires servicers to handle trial payments. See, e.g., Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, v5.1 129 (May 26, 2016) (requiring servicers to hold HAMP trial period payments in a "custodial account" until "the total of the reduced payments held as 'unapplied funds' is equal to a full PITI [principal, interest, tax and insurance] payment"); SD 09-01, at 18 (providing for trial payments to be held "as 'unapplied funds'" until "equal to a full PITI payment").

Plaintiffs next allege being "falsely informed" in December 2011 that their documents were "not current." (Dkt. 20, SAC, ¶ 41). If this information was false, Plaintiffs were in a position to know that in December 2011. Finally, Plaintiffs point to "property inspection" fees supposedly charged "from 2010 to 2011" and allege that "BOA employees omitted the fact that the bank was conducting . . . inspections on their

---

[4] Available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.

home and charging their account inspection fees." (Id., ¶ 53). Even if Defendant had omitted this fact, Plaintiffs failed to allege that they were not aware of property inspections going on while they "lived in their home." (Id., ¶ 52). If Plaintiffs had somehow been prevented from discovering this information until much later, it was incumbent on them to allege this in their Second Amended Complaint. Plaintiffs' ability to discover the basis for their claims as soon as the relevant statements were made necessarily defeats any attempt to get around the statute of limitations. Plaintiffs even admit that other borrowers had managed to file lawsuits against Defendant challenging its handling of HAMP modifications all the way back in 2010. (Id., ¶ 31). Plaintiffs could have done likewise.

In their response to the Motion to Dismiss, Plaintiffs make a belated attempt to raise the discovery rule in order to circumvent the statute of limitations.[5] However, because Plaintiffs failed to make any allegations in the Second Amended Complaint that the four-year limitations period should be tolled or that their claims should be deemed to have accrued at some later date on "discovery rule" grounds or otherwise, this belated attempt to avoid the time bar of their fraud claim is too little too late. "[I]t is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss." Eiras v. State Dep't of Bus. & Prof'l Regulation, Div. of

---

[5] Plaintiffs use the term "discovery rule," but the argument reads more like the doctrine of equitable tolling, which is an altogether different legal doctrine. See generally, Butler Univ. v. Bahssin, 892 So. 2d 1087, 1091 n.3 (Fla. Dist. Ct. App. 2004) (explaining that "[t]he delayed discovery doctrine should not be confused with fraudulent concealment of a cause of action.").

Alcoholic Bevs. & Tobacco, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) (citation omitted). The importance of this rule becomes all the more evident in cases like this one, where Plaintiffs are already on their Second Amended Complaint and have, therefore, had *three* separate opportunities to allege the facts that entitle them to relief.

Plaintiffs argue in their opposition to the Motion to Dismiss that they are not required to negate an affirmative defense in their complaint, but as Defendant correctly asserts, the argument is misplaced. Although the statute of limitations is an affirmative defense, Plaintiffs are the ones who carry the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993). Therefore, it is Plaintiffs' burden to "plead such facts" in their complaint. See Ross v. Mickle, 194 F. App'x 742, 744 (11th Cir. 2006) (affirming dismissal where "[i]t was clear on the face of [the] complaint that it was filed out-of-time and there were no facts in the complaint indicating that [plaintiff] could avoid the statute-of-limitations bar" or "that could have alerted the court to the possibility of a tolling argument") (unpublished). Plaintiffs even concede that dismissal on the basis of an affirmative defense such as the statute of limitations is appropriate where the defense is apparent from "the face of the complaint." (Dkt. 28, p. 5).

In order to invoke the discovery rule, Plaintiffs "must have [pled] facts to show: (1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence." In re Trasylol Prods. Liab. Litig., 2010 WL 6098571, at

*11 (S.D. Fla. Mar. 17, 2010) (citation omitted).  As Defendant asserts, neither the complaint nor Plaintiffs' opposition brief offers a single word about any act of "diligence" by the Plaintiffs prior to their purported discovery of their claims.  See, e.g., Bedtow Grp. II, LLC v. Ungerleider, 684 F. App'x 839, 842 (11th Cir. 2017) ("Florida's delayed discovery rule does not act to postpone the accrual of [plaintiff's] causes of action" because plaintiff's "reliance" on statements made by the defendant does not "excuse [plaintiff's] failure to exercise due diligence") (unpublished); Varner v. Domestic Corp., 2017 WL 3730618, at *9 (S.D. Fla. Feb. 7, 2017) ("To support equitable tolling under the discovery rule, . . . a plaintiff must plead sufficient facts to show the time of the discovery and to support his diligence in delayed discovery.").

Here, it is apparent from the Second Amended Complaint that Plaintiffs brought suit in 2017 based only on representations allegedly made to them between 2009 and 2011.  Therefore, their claims are subject to a four-year limitations period.  See Horsley v. Univ. of Ala., 564 F. App'x 1006, 1009 (11th Cir. 2014) ("[O]ur case law makes clear that dismissal under Rule 12(b)(6) on statute of limitation grounds depends only on 'the face of the complaint.'  Thus, the district court properly limited its consideration [of the plaintiff's equitable tolling claim] to the face of [the] complaint and ignored any arguments in [the plaintiff's] subsequent pleadings.") (citation omitted) (unpublished); see also, Licul v. Volkswagen Grp. of Am., Inc., 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013) ("Plaintiffs' FDUTPA claim also appears time-barred. . . . Plaintiffs have also

failed to plead facts to support tolling under the doctrine of fraudulent concealment[.]"). Plaintiffs, here, are in an even *worse* position than the plaintiffs in Licul, who at least mentioned the tolling theory in their complaint, but had their case dismissed anyway because they alleged equitable tolling only with "labels and conclusions." Licul, 2013 WL 6328734, at *7.

Plaintiffs attempt to argue that they did, in fact, plead the facts supporting their discovery rule argument in the Second Amended Complaint insofar as they alleged "concealment" of a "fraud." (Dkt. 28, p. 6). However, Plaintiffs do not point to any actual allegations of concealment, only to their general fraud claims. The Eleventh Circuit has specifically rejected this tactic as a means of evading the time bar. See Raie v. Cheminova, Inc., 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (rejecting plaintiffs' "attempt to argue fraudulent concealment" because "the plaintiffs' complaint in this case does not allege any specific acts of misrepresentation or concealment that could support a claim of fraudulent concealment[,]" only "a cause of action for fraud"). The Court must agree with Defendant that if the law were otherwise, then the statute of limitations for fraud claims would be rendered a nullity—plaintiffs would simply allege that defendants "concealed" every supposed fraud by not characterizing their own statements as fraudulent. See, e.g., Stewart v. Bureaus Inv. Grp. #1, LLC, 24 F. Supp. 3d 1142, 1160 (M.D. Ala. 2014) ("silence and unwillingness to divulge one's allegedly wrongful

activities" are "not the sort of active concealment for which the equitable tolling remedy was created") (internal quotation marks omitted).

Plaintiffs also failed to plead an "inability to have made earlier discovery despite reasonable diligence." They merely argue, in conclusory fashion in their Response in Opposition to the Motion to Dismiss that they "would not have been capable of uncovering the scheme" even if they had exercised the requisite reasonable diligence because the alleged "scheme" was only revealed in two declarations that were prepared in 2017. (Dkt. 28, p. 6). However, the "Declaration of Steven Cupples dated May 13, <u>2017</u>" cited by Plaintiff is actually dated "May 13, <u>2013</u>," more than four years before Plaintiffs brought suit. (Dkt. 20, SAC, ¶ 27; Ex. 6). The additional Declarations that Plaintiffs attach to their Second Amended Complaint, except for one, are also dated 2013. (See Dkt. 20, Exs. 2-5). The exception is the 2017 "Rodrigo Heinle" Declaration, but this Declaration does not offer any new information—it merely makes the same claims as the 2013 declarations. (Dkt. 20, SAC, Ex. 2, ¶¶ 23-27). Plaintiffs will not be permitted to keep the statute of limitations suspended by finding new people to repeat the same information that has been available for more than four years.

In light of all the foregoing, the Court finds that the Second Amended Complaint must be dismissed as time-barred under the four-year limitations period in section 95.11(3)(j), Florida Statutes, for actions founded on fraud.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED** as follows:

Defendant's Motion to Dismiss the Second Amended Complaint (Dkt. 21) is **GRANTED**. This case is dismissed with prejudice.[6] The Clerk is directed to enter judgment in favor of Defendant, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on this 26th day of January, 2018.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>COPIES FURNISHED TO</u>:
Counsel of Record

---

[6] The Court notes that Plaintiffs have failed to seek leave to file another amended complaint, with the proposed amended complaint attached, nor suggested to the Court the substance of any proposed amendment. Cf. Cita Trust Co. v. Fifth Third Bank, ___ F. 3d ___, 2018 WL 416253, at *5 (11th Cir. Jan. 16, 2018).